# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 15, 2005 Session

## CEDRIC DAVIS aka CEDRIC BOOKER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-20799     John P. Colton, Jr., Judge**

---

**No. W2004-02505-CCA-R3-PC  - Filed January 24, 2006**

---

The petitioner, Cedric Davis aka Cedric Booker, appeals from the post-conviction court's denial of his petition for post-conviction relief.  On appeal, he argues that the post-conviction court erred in finding that he received the effective assistance of counsel.  Following our review of the record and the parties' briefs, including the petitioner's reply brief, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which James Curwood Witt, Jr. and Norma McGee Ogle, JJ., joined.

Robert C. Brooks, Memphis, Tennessee, for the petitioner, Cedric Davis aka Cedric Booker.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; William L. Gibbons, District Attorney General; and Phyllis Gardner and Paul Thomas Hoover, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## BACKGROUND

A brief synopsis of the facts of this case is set out in this court's decision on direct appeal. *See State v. Cedric Davis*, No. 02C01-9610-CR-00352, 1997 WL 576483 (Tenn. Crim. App., at Jackson,  Sept. 16, 1997) *perm. app. denied* (Tenn. Apr. 13, 1998).  The facts are as follows:

> [A]t approximately 5:30 p.m. on April 30, 1993, defendant, Kedrick Crutcher ("Pokey") and Kavious Jenkins ("Teddy Bear") were traveling in an automobile looking for Phillip Thomas.  Both defendant and Jenkins were carrying weapons. They asked a group of people if Phillip Thomas lived in the home at 219 Silver Maple.  One person in the group, Marcel Pratcher, identified the defendant as the

person who was armed with what appeared to be a TECH-9 weapon and who stated, "tell Phillip I'm going to kill his momma and then he's going to be next."

Defendant, Crutcher and Jenkins pulled into the driveway at 219 Silver Maple. Two of the men jumped out of the car and began shooting. Laura Warren, Phillip Thomas' grandmother, was shutting the front door when she was hit by one of the bullets. She died of a gunshot wound to the chest. The victim's granddaughter and another person in the neighborhood identified the defendant as one of the gunmen.

Defendant offered an alibi defense at trial. His wife, Teresa, testified that defendant was with her at the Wilson Inn on American Way at the time of the incident. She presented a receipt from the hotel which showed a check-in time of 5:54 p.m. on the day of the shooting. Furthermore, Yolanda Aikens testified that defendant hit her car as she was leaving the hotel at approximately 5:30 p.m. on April 30.

Jenkins also testified on behalf of the defense. He claimed that defendant was not involved in the incident and insisted the shooting was carried out by Crutcher, himself and a man named "Butter."

On rebuttal, the state presented a letter written to Crutcher. In the letter, the writer asks Crutcher to assist, along with "Teddy Bear," in a plan to blame the shooting on a man named "Butter." A handwriting expert testified that the writing in the letter was consistent with that of the defendant's. Additionally, Cindy Mahoney, an employee of Wilson Inn, testified that there was no record of defendant's staying at that hotel on April 30.

Defendant testified on surrebuttal. He denied writing the letter to Crutcher. The state then asked defendant about ten (10) prior felony convictions for impeachment purposes.

The jury returned a verdict of guilty of murder in the first degree. Defendant was sentenced to life imprisonment.

*Id.* at 1.

The petitioner filed a motion for a new trial, which the trial court denied, and the petitioner appealed. On direct appeal, this court affirmed the petitioner's conviction, and the Tennessee Supreme Court subsequently denied his application for permission to appeal. The petitioner filed a timely petition for post-conviction relief and later an amended petition, alleging more than thirty grounds for relief. The post-conviction court conducted at least four evidentiary hearings, during

which the petitioner presented the testimony of several witnesses.[1] Although the record on appeal contains four volumes of post-conviction testimony, we limit our recitation to the testimony relevant to the petitioner's allegations on appeal.

John Wright, a legal investigator and process server, was the first to testify at the hearings. Wright testified that he assisted defense counsel in investigating the petitioner's case. According to Wright, he interviewed the petitioner, the petitioner's wife (girlfriend at the time), Anthony Bernard Phillips, Yolanda Aikens, and Ron Gene, and did everything else counsel instructed him to do. Wright also testified that he and counsel "spent some time, probably an hour or so" examining the prosecutor's extensive file and making copies. Included in the file was a stapled packet, which had "Copy of the homicide file do not take apart" written on it. Wright stated that he believed that this examined file was the entire case file for the prosecution. However, Wright acknowledged that he did not personally have a conversation with the prosecutor regarding the issue. Wright recounted that the statements from Marcel Pratcher and Brenda Granger, two eyewitnesses, were in the discovery materials counsel received.

Defense counsel was the next to testify at the hearings. Counsel testified that upon undertaking representation of the case he talked to the petitioner and the petitioner's family, checked the records in the criminal court clerk's office, talked with the previous attorneys on the case, and did "whatever [he] thought was necessary to be done." Counsel stated that he examined the police reports and all the motions the previous attorneys had filed. According to counsel, he was not informed that Brenda Granger and Belinda Robinson, two of the eyewitnesses, had failed to identify the petitioner in a photographic lineup prior to trial. However, counsel admitted that information was in the discovery materials.

During his examination, counsel could not recall personally interviewing Granger, but stated he believed Granger had been interviewed by Investigator Wright. Counsel also could not recall whether he questioned Granger and Robinson during the trial about their failed identification of the petitioner. When asked about whether he had a strategic or tactical reason for not examining the witnesses about their failed photographic identification of the petitioner, counsel replied, "I thought the [petitioner] was in the motel at the time these shootings occurred." Counsel further testified that he contacted the previous attorneys and discovered the preliminary hearing tape had been lost; therefore, he was unable to investigate whether Granger identified the petitioner at the hearing.

Counsel recalled that the attorney for co-defendant Crutcher turned over a letter to the prosecutor allegedly written by the petitioner, and the prosecutor filed a motion requesting handwriting exemplars from the petitioner. Counsel testified that he told the petitioner "[d]on't give it to them because . . . I don't think they know what they're talking about[,]" but the petitioner wanted to provide the sample. Counsel testified that he talked to the handwriting expert prior to trial and researched the law on handwriting experts as best as he could. The expert informed counsel that

_____

[1] The fourth post-conviction hearing transcript indicates that there was going to be a fifth hearing; however, a fifth transcript is not in the record on appeal, and the parties do not mention any further hearing.

the petitioner wrote the letter, but counsel did not believe "twelve reasonable men and women would believe hocus-pocus [handwriting analysis]." According to counsel, his research indicated that handwriting analysis is pure opinion. Counsel testified that he did not file a motion to suppress the handwriting exemplars because the judge had ordered it done. Although counsel had never had a case involving forensic handwriting analysis before, he "looked up what [he] thought was important." When questioned whether he prepared jury instructions in the case, counsel responded "I've always found the [j]udges know what they are doing [so I ] let them do what they're paid to do." On cross-examination, counsel was shown the supplementary offense report and read aloud where some witnesses identified the petitioner, though others did not.

James Lammey, Assistant District Attorney was the next to testify. Lammey testified that several other prosecutors were involved in the case prior to his involvement. According to Lammey, the district attorney's office received a letter reportedly written by the petitioner. After looking at his file, Lammey recalled that a preliminary hearing was conducted, but the tape of the hearing was lost. Lammey recalled that there were discussions about the missing preliminary hearing tape, but he did not recall whether any motions were filed. Lammey recounted that he was not at the preliminary hearing. Therefore, he did not know whether any of the witnesses identified the petitioner. However, Lammey noted that there was nothing in his file to indicate there were identification problems at the hearing.

When asked, Lammey recalled that a couple of the witnesses were not able to pick the petitioner out of a photographic lineup, and this information was made available to defense counsel via the discovery materials. Lammey noted that the petitioner's photograph, used in the lineup, was taken two years prior to the incident and showed the petitioner with his eyes closed. Lammey also pointed out that Carlos Taylor, an eyewitness, was able to identify the petitioner from the photographic lineup.

Lammey testified that defense counsel alleged at trial that he did not receive a copy of the handwriting expert's report, but Lammey maintained that counsel received a hand-delivered copy of the report at least a month before trial. When asked, Lammey could not recall whether counsel filed any motions challenging the admissibility of the handwriting expert's report or the letter allegedly written by the petitioner. However, Lammey did remember that counsel argued the report and the letter were inadmissible. Lammey recalled that the petitioner was identified in the photographic lineup by those witnesses who knew the petitioner. Lammey also recalled that one of the co-defendants gave a lengthy statement implicating the petitioner but could not remember whether the other co-defendant gave a statement. Lammey noted that Marcel Pratcher testified at trial, so he assumed he spoke with Pratcher beforehand. Lammey stated that he was aware Pratcher took an officer to a residence believed to be "Cedric's," but in fact the residence was not the petitioner's residence. Lammey asserted, however, he did not understand how the mistake related to the reliability of Pratcher's identification of the petitioner. Regarding counsel's performance, Lammey testified that counsel was abrupt and hard to get along with, but he believed counsel had provided effective assistance to the petitioner.

Former crime scene bureau captain, Golay Allen, testified at the hearings. Allen recalled his activities at the crime scene, including taking fingerprints, drawing sketches, and collecting evidence. Ronnie Williams, formerly with the Memphis Police Department, was also called to testify. Williams reviewed the supplementary offense report prepared by another officer; however, after looking at the report, Williams was unable to recollect any pertinent details of the investigation.

After the hearings, the post-conviction court entered an order denying post-conviction relief. The post-conviction court found that the petitioner failed to prove his allegations of ineffective assistance by clear and convincing evidence. The petitioner appealed.

## STANDARD OF REVIEW

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is de novo with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Id.*

To establish ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id.* at 697; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Also, a fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad*, 938 S.W.2d at 369. However, deference is given to strategy and tactical decisions only if the decisions are informed ones based upon adequate preparation. *Id.* (citations omitted).

## ANALYSIS

On appeal, the petitioner argues that he received the ineffective assistance of counsel. Specifically, the petitioner asserts that his counsel was ineffective for (1) failing to cross-examine and impeach the state's witness, Brenda Granger, regarding her previous inability to identify the petitioner; (2) failing to request a proper eyewitness identification instruction; and (3) failing to properly investigate the testimony of handwriting expert Thomas Vastrick.

## IMPEACHMENT

The petitioner first argues that his counsel was ineffective for failing to cross-examine and impeach Brenda Granger regarding her inability to identify him from a photographic lineup and at the preliminary hearing. According to the petitioner, the credibility of Granger's eyewitness identification testimony was a critical issue at trial because of his alibi defense. The petitioner asserts that the police report, which indicated Granger's failed identification, was readily available to counsel and should have been used to impeach Granger's testimony after she positively identified him at trial. The report, in part, stated:

> On Tuesday, May 4, 1993, at 9:55 a.m., the writers went to [the crime scene] and had Brenda Granger view three photo line-ups of the suspects, marked "A, B, & C". Brenda Granger did not make an identification at this time. She said the one that she saw had a fade.

The petitioner also asserts that because the tape of the preliminary hearing was lost, counsel was ineffective for failing to secure witnesses who were present at the hearing to testify to Granger's inability to identify him at the hearing.

We begin our review by reiterating that the petitioner must show both deficiency and prejudice in order to succeed on an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 687. Even assuming counsel was deficient for failing to cross-examine and impeach Granger regarding her alleged failed identifications of the petitioner, the petitioner has not demonstrated how he was prejudiced by counsel's error. If prejudice is absent, there is no need to examine allegations of deficient performance. *Id.* at 697. First, the petitioner has failed to show that there was a reasonable probability the outcome of the trial would have been different had counsel discredited Granger's in-court identification. The record reflects that Granger was not the only person who implicated the petitioner in the shooting. The police report, which the petitioner urges should have been used to impeach Granger, also reveals that Carlos Deon Taylor witnessed the shooting and gave a statement to the police. According to Taylor, he saw three individuals, "Cedric, Kavious Jenkins, and Poky" pull into the victim's house; Cedric got out of the car and started shooting. Taylor identified Cedric from a photographic lineup. The same police report also showed that Phillip Thomas, the intended victim, identified the petitioner as the person he knew as Cedric. Both co-defendants gave lengthy statements to the police implicating the petitioner. Additionally, Marcel Pratcher testified at trial that he saw the petitioner, "Teddy Bear," and "Pokey" in a car around the corner from the victim's house just before the shooting. According to Pratcher, the petitioner pulled up and said, "tell Phillip I'm going to kill his momma and then he's going to be next." The car

pulled away, and ten seconds later he heard shots. In sum, the petitioner has failed to prove how discrediting Granger's trial testimony with the police report would have overcome the wealth of other identification evidence against him, resulting in a different outcome at trial.

Second, we note that other than the petitioner's allegation that Granger was unable to identify him at the preliminary hearing, the petitioner failed to present proof supporting this allegation. At the post-conviction hearing the petitioner did not present any witnesses to testify that Granger did in fact fail to identify him at the preliminary hearing. As a general rule, the presentation of these witnesses at the post-conviction hearing is necessary to prove that counsel's failure to utilize these witnesses resulted in prejudice to the petitioner. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither the post-conviction court nor this court may speculate on what a witness' testimony might have been if introduced by counsel. *Id.* On the other hand, the state presented testimony, that suggested that Granger was able to identify the petitioner. According to prosecutor Lammey, the usual practice of the district attorney's office was to note if a witness was unable to identify a defendant at a preliminary hearing for future reference. Lammey testified, however, that no such notation existed on the prosecutor's case sheet. Consequently, without any proof of prejudice, the petitioner is not entitled to relief on this issue.

### JURY INSTRUCTION

The petitioner next argues that counsel was ineffective for failing to request an eyewitness identification jury instruction in accordance with *State v. Dyle*, 899 S.W.2d 607 (Tenn. 1995). Specifically, the petitioner argues that he was prejudiced by counsel's cumulative errors of not requesting a jury instruction on identification and not impeaching Granger's in-court identification.

In *Dyle*, our supreme court held whenever the identity of a defendant constitutes a material issue in the case, and defense counsel requests an identification instruction, such instruction must be given. *Id.* at 612. Otherwise, the failure to give the identification instruction is plain error. *Id.* However, the court determined that if defense counsel fails to request the instruction when identity is a material issue, then such failure is to be reviewed under a harmless error standard. *Id.*; *See* Tenn. R. Crim. P. 52(a). The court noted that the defendant's identity becomes a material issue "when the defendant puts it at issue or the eyewitness testimony is uncorroborated by circumstantial evidence." *Dyle*, 899 S.W.2d at 612 n.4.

Although defense counsel did not request the *Dyle* instruction on identity, the trial court gave a lengthy and detailed instruction, much more specific than the pattern charge disfavored by our supreme court in *Dyle*. The jury instruction given by the trial court in this case was:

> The Court charges you that the identity of the defendant <u>CEDRIC DAVIS,</u> must be proven in the case on the part of the State to your satisfaction, beyond a reasonable doubt. In other words, the burden of proof is on the State to show that the defendant now on trial before you is the identical person who committed the alleged crime with which he is charged. In considering the question of the identity of a

person, the Jury may take into consideration the means and opportunity of identification, if any; whether it was light or dark; the distance intervening; the dress or clothing worn; the character and color of same; the size, height, and color of the individual; whether known to him, and if so, how long, and if seen before, under what circumstances; whether running or moving rapidly, standing still, walking fast or show [sic] at the time claimed to the person testifying; the color of the hair; hat worn; facial expression or features and appearance; whether with or without mustache and beard; whether person said to be identified was white, black, dark, yellow, or light color; masked or not; the voice and speech.

All these things when shown in the proof may be considered by the Jury in determining the question of identity. The word identity means the state or quality of being identical, or the same; it means sameness; Identification means the act of identifying or proving to be the same. The word "identity" means to establish the identity or to prove to be the same as something described, claimed or asserted.

The Court charges you that if you are satisfied from the whole proof in this case, beyond a reasonable doubt, that the defendant, <u>CEDRIC DAVIS</u>, committed the crime charged against him, and you are satisfied, beyond a reasonable doubt that he has been identified as the person who committed the crime charged, then it would be your duty to convict him. On the other hand, if you are not satisfied with the identity from the proof, or you have a reasonable doubt as to whether he has been identified from the whole body of the proof in the case, then you should return a verdict of not guilty.

Assuming arguendo that counsel's failure to request the *Dyle* instruction was deficient, we cannot conclude that the petitioner has established prejudice. The petitioner was obliged to prove by clear and convincing evidence a reasonable probability that the outcome of the trial proceeding would have been different had the instruction been given. *See Stickland*, 466 U.S. at 694. We note, there is no indication that the jury based its decision solely on Granger's eyewitness identification, and the record contains ample evidence on which the jury could have reasonably determined that the petitioner was the shooter. The record indicates that more than one eyewitness placed the petitioner at the scene of the shooting. There was testimony at trial that "Cedric" was in the victim's neighborhood ten seconds before the shooting. In a statement to the police, one of the intended victims identified the petitioner as the "Cedric" he knew. Also, the two co-defendants gave statements implicating the petitioner. Furthermore, even though the petitioner offered "several witnesses who testified consistently in support of [his] alibi defense," the state offered strong rebuttal proof aimed to discredit the petitioner's alibi defense. In view of this evidence and the thorough identification instruction given by the trial court, we are unconvinced that the petitioner was prejudiced by counsel's failure to request the *Dyle* instruction on identity. Accordingly, the petitioner is not entitled to relief on this issue.

## HANDWRITING EXPERT

The petitioner finally argues that counsel was ineffective for failing to call an expert witness to counter the testimony of the state's handwriting expert, Thomas Vastrick. In support of his argument, the petitioner notes that handwriting analysis is a valid subject of expert testimony; therefore, counsel should have investigated the facts and attempted to introduce expert proof to counter the state's expert. *See e.g.*, *State v. Harris*, 839 S.W.2d 54, 69 (Tenn. 1992); *State v. Zimmerman*, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991). However, our review of the record indicates that counsel researched Vastrick's credentials and conducted a lengthy examination of his methodology and conclusions. The method used to examine and discredit the analysis of an expert is a tactical decision within the purview of counsel. As a reviewing court, we will not second guess tactical choices made by trial counsel. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); *Tolliver v. State*, 629 S.W.2d 913, 914 (Tenn. Crim. App. 1981). Additionally, assuming counsel was deficient for failing to obtain an expert witness, the petitioner has failed to show prejudice. The petitioner had the opportunity to present expert testimony at the post-conviction hearing to contradict Vastrick's conclusion that the petitioner wrote the damaging letter to the co-defendant. The petitioner did not offer any such proof. Without proof that another expert would have testified differently, we cannot determine that the petitioner was prejudiced by counsel's failure to obtain an expert witness. Accordingly, the petitioner is not entitled to relief on this issue.

## CONCLUSION

The evidence does not preponderate against the findings of the post-conviction court. The petitioner has not shown that he was prejudiced by any of the alleged deficiencies of counsel. The petitioner thus failed to establish that he is entitled to post-conviction relief on the basis of ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

_____
J.C. McLIN, JUDGE