# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
June 5, 2007 Session

## STATE OF TENNESSEE v. RONNIE HENRY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-08309      W. Fred Axley, Judge**

---

**No. W2006-00344-CCA-R3-CD  - Filed February 19, 2008**

---

The defendant, Ronnie Henry, was convicted of four counts of aggravated robbery, a Class B felony, and four counts of robbery, a Class C felony. The defendant received an effective sentence of seventy years. On appeal, the defendant presents three issues: (1) the sufficiency of the evidence to sustain the convictions; (2) error in the limitation of the testimony of a defense witness; and (3) error in sentencing. After review, we affirm the convictions but remand the case for resentencing in compliance with the standards contained in this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;  Case Remanded for Resentencing**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Robert C. Brooks (on appeal) and Jesse Walker Dalton, III (at trial), Memphis, Tennessee, for the appellant, Ronnie Henry.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Hagerman and Ray Lepone, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case involves the participation of the defendant in a robbery involving multiple victims at an Enterprise Rental Car Agency in Memphis on July 16, 2002. Mario Colbert testified that he and a friend, Torrie Lyles, were at the Enterprise location exchanging a rental car. The two men saw Russell Jones, the branch manager, counting money in his office. Lyles told Colbert he was going to call the defendant and did so. Approximately fifteen minutes later, the defendant and Vincent Williams came to the Enterprise location. Williams wore a stocking mask, but the defendant's face was not covered. The defendant and Williams ordered the people inside the building to get on the ground. Williams was holding a pistol. Colbert and Lyles placed themselves on the floor and

pretended to be victims of the robbery. Colbert stated that Russell Jones was robbed, but he did not watch other individuals being victimized. Colbert and Lyles stayed on the scene after the police arrived and continued the ruse of being victims. Later, Colbert met with Lyles, Williams, and the defendant at the home of Lyles' brother, where the defendant distributed the robbery proceeds. Colbert said he received "seven hundred and something" but did not know how much was taken or how it was divided.

On cross-examination, Colbert stated that the defendant and Williams were the only individuals who conducted the robbery. The only weapon he observed was in Williams' possession.

Russell Jones testified that he was the branch manager of the subject Enterprise location in July 2002. Jones knew Colbert as a regular rental car customer and said Lyles would accompany him. Jones was counting the store's cash proceeds when he heard a disturbance in the lobby. The defendant entered the office and forced Jones to the floor. The defendant then took the box of cash, Jones' wallet, briefcase, and cardholder. The defendant attempted to remove a ring but Jones successfully resisted. Jones heard a small girl scream and the girl's mother pleading not to shoot. He stated that he saw two men with guns. Approximately six months later, Jones attempted to identify the masked robber from a photo lineup. No identification was made at that time. Later, he identified the defendant from a photo lineup as the individual who had robbed him. Jones also identified the defendant at the preliminary hearing and at trial. Jones did not see the defendant with a weapon during the robberies.

Naziroddin Kazi was visiting at the Enterprise agency when the robbery occurred. He saw two men running toward the store. They entered the business and ordered those inside to get down. Kazi saw a revolver but did not get a good view of either man. Kazi was placed on the floor with a gun to his head. He was frisked, and his car keys, wallet, and approximately $400 were taken from him.

Brian Denton, the Enterprise assistant manager, was working behind the rental counter when the robbery began. He was commanded to get down by a masked man who was pointing a gun at him. He did not see any others involved in the robbery but could hear other voices making demands. He was asked where the money was kept, and he pointed toward Jones' office. The items taken from Denton were his car keys, a cigarette lighter, and twenty to thirty dollars. He stated that he could hear other victims screaming and pleading.

Frank Scott was an intern at the agency at the time of the robbery. He stated that he had just walked into the building when he was told to "hit the ground." One of the robbers placed a gun to his head and walked him to the office. Scott saw the defendant take the money from the office. Approximately $3000 was taken from the cash box. Scott was robbed of his cell phone and his wallet which contained approximately thirty dollars. In February 2003, he identified the defendant from a photo lineup as a participant in the robbery. He also identified him in General Sessions Court and at trial.

Officer Gary Badgett of the Memphis Police Department was an early responder to a radio alert of a robbery in progress. He testified that he spoke with Lyles and Colbert at the scene. He said both men seemed to be smiling and without any anger or nervousness from the event.

Vincent Williams was the only defense witness. He testified that he was in the Shelby County Jail in February 2004 when a guard brought Mario Colbert to his cell. After Colbert introduced himself, Williams asked him "why did he tell a lie on me." Colbert responded that his "beef" was with the defendant and not with Williams.

## Sufficiency

When reviewing the sufficiency of the evidence, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002); Tenn. R. App. P. 13(e). Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to demonstrate why the evidence is sufficient to support the verdict. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003). On appeal, the State is entitled to the strongest legitimate inferences that may be drawn therefrom. State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000).

A verdict of guilt by the trier of fact resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 641, 659 (Tenn. 1997). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not re-weigh or re-evaluate the evidence." Evans, 108 S.W.3d at 236 (citing Bland, 958 S.W.2d at 659). Nor may this court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. Evans, 108 S.W.3d at 236-37.

The focus of the defendant's challenge as to sufficiency of the convicting evidence is a general attack on the reliability of eyewitness identification. Two victims, Russell Jones and Frank Scott, made positive identifications of the defendant as one of the men who carried out the robbery. Both victims identified the defendant first from a photo lineup, then in General Sessions Court and at trial. Jones' and Scott's unequivocal identifications of the defendant were consistent with the testimony of Mario Colbert, an accomplice.

The fallibility of human perception, in all sensory realms, has been recognized by scientists and our courts.

> [A]ccuracy of eyewitness testimony is affectable by the usual universal fallibilities of human sense perception and memory. This phenomenon, which could obviously affect other forms of evidence also, is potentialized by the fact that this testimony is

prone to many outside influences (police interrogations, lineups, etc.) and is often decisive.  See Loftus, Eyewitness Identification 7 (1979).

State v. Dyle, 899 S.W.2d 607, 612 (Tenn. 1995).

In order to safeguard against undue reliance on questionable identification, our supreme court in Dyle formulated a jury instruction to be given when identification is a material issue.  Id.  The factors for consideration of the eyewitness testimony include:  the witness's capacity and opportunity to observe the offender; the degree of certainty expressed by the witness; the occasions on which the witness failed to make an identification; and the occasions on which the witness made consistent identifications.

The State alleges in its brief that the Dyle instruction was given in this case.  The defendant's brief is silent in this regard.  The record does not contain the jury instructions.  It is the duty of the appellant to provide a record which conveys a fair, accurate, and complete account of what transpired with regard to issues which form the basis of the appeal.  Tenn. R. App. P. 24(b); see State v. Taylor, 999 S.W.2d 941, 944 (Tenn. 1999).  If jury instructions are omitted from the appellate record, it is presumed that the trial court correctly instructed the jury.  Tillery v. State, 565 S.W.2d 509, 511 (Tenn. Crim. App. 1978).

There were obvious inconsistences in some witnesses' testimony as to the number of weapons used in the robbery.  Such is understandable in the confusion attendant to such a sudden and unexpected event.  However, it is the jury's responsibility to determine the value and credibility of the evidence.  The inconsistencies do not negate the eyewitness identification of the defendant by the victims, Jones and Scott, who were corroborated by accomplice, Colbert.  In light of the foregoing, we conclude that the evidence, including the identification evidence, was sufficient to support the verdict of guilty beyond a reasonable doubt.

Limitation of Cross-Examination

The defendant next asserts error by the trial court's limitation of the defendant's examination of Brian Denton regarding a suppressed identification made by Denton.

Although it was not included in the appellate record, it can be gleaned that there was a pretrial suppression ordered of Brian Denton's identification of Vincent Williams, the masked co-defendant.  Williams was not tried with this defendant.  The suppression was apparently based on Denton's statement that his identification of Williams from a photo lineup was ninety percent certain. Williams was wearing a mask during the robbery.  The State made an in limine motion that the defendant be barred from questioning Denton concerning the suppressed identification, which was granted.  The defendant argues that the trial court's ruling deprived him of attacking the credibility of Denton's entire testimony and violated his due process rights.

Denton's testimony was essentially non-incriminatory as to the defendant. He did not see the defendant and merely related a limited experience during the robbery. Denton's only encounter was with the masked robber, Williams, and not with the defendant.

In reviewing a trial court's decision concerning the admission of evidence, we will do so using an "abuse of discretion" standard. See State v. Dubose, 953 S.W.2d 649, 652-53 (Tenn. 1997). This is measured by whether a "court applied an incorrect legal standard or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999) (citing State v. Shuck, 957 S.W.2d 662, 669 (Tenn. 1997)).

Denton's testimony served only to corroborate that a robbery occurred. It served little purpose toward implicating the defendant. If error at all, it was harmless error to exclude the equivocal identification of a co-defendant. If the entirety of Denton's testimony was excluded, the evidence remaining would be overwhelmingly sufficient to convict the defendant. We conclude that this issue affords no relief for the defendant.

Sentencing

The defendant challenges his sentence in his last issue. The defendant takes issue with the sentence on the basis of an alleged misapplication of enhancement factors and in imposing consecutive sentences. We remand the sentencing on other grounds.

The trial court applied the following enhancement factors:
(1)     the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
(2)     the defendant was a leader in the commission of an offense involving two or more criminal actors;
(3)     the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
(4)     the defendant had no hesitation about committing a crime when the risk to human life was high; and
(5)     the crime was committed under circumstances under which the potential for bodily injury to a victim was great.

The trial court then imposed sentences of twenty years for each aggravated robbery as a multiple offender and fifteen years for each robbery as a persistent offender, for an effective sentence of seventy years. There is no indication in the trial court's ruling on sentencing that it gave any consideration to the proposed mitigating factors.

We are now aware, since the issuance of State v. Gomez II, __ S.W.3d __ (Tenn. 2007), that it is plain error to apply judicially determined enhancement factors other than factor (1), that of previous history of criminal convictions or criminal behavior, to enhance a defendant's sentence. This defendant had an extensive record of past convictions which he does not contest. The trial

court's ruling in sentencing is silent as to the weight attached to the various enhancement factors applied. This impedes appellate review and makes it necessary to remand for resentencing in compliance with Gomez II and our standard principles of sentencing.

The defendant has also challenged the imposition of consecutive sentences. On resentencing, the trial court is not barred by Sixth Amendment principles in considering consecutive sentences.

> The manner of service of the sentence imposed when a trial court decides whether to impose consecutive sentences - a decision it may make only after the jury has found the defendant guilty of multiple offenses beyond a reasonable doubt - does not usurp the jury's factfinding powers or offend the defendant's due process rights.

State v. Joseph Wayne Higgins, No. E2006-01552-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 763 at *43 (Tenn. Crim. App. at Knoxville, Sept. 27, 2007).

Therefore, if considering consecutive sentences, the trial court should adhere to the criteria contained in Tennessee Code Annotated section 40-35-115 and, if applicable, the additional findings required by State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995).

## Conclusion

The convictions are affirmed. The cause is remanded for resentencing in light of the guidelines contained herein.

_____
JOHN EVERETT WILLIAMS, JUDGE