# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
## NOVEMBER SESSION, 1996

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **No. 02C01-9511-CR-00340** |
| **Appellee** | ) | |
| | ) | **SHELBY COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. BERNIE WEINMAN, Judge** |
| **LEON B. FRANKLIN,** | ) | |
| | ) | **(Robbery)** |
| **Appellant** | ) | |

For the Appellant:

**A.C. WHARTON**
District Public Defender

**WALKER GWINN**
Asst. Public Defender
201 Poplar Avenue
Suite 2-01
Memphis, TN  38103

**BARRY KUHN**
Asst. Public Defender
201 Poplar, Second Floor
Memphis, TN  38103

For the Appellee:

**CHARLES W. BURSON**
Attorney General and Reporter

**JANIS TURNER**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**WILLIAM GIBBONS**
District Attorney General

**LORRAINE CRAIG**
Asst. District Attomey General
201 Poplar, Third Floor
Memphis, TN  38103

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

**OPINION**

The appellant, Leon B. Franklin, was convicted by a Shelby County jury of robbery, Tenn. Code Ann. § 39-13-401 (1991), and sentenced to three years confinement in the county workhouse. On appeal, the appellant challenges the sufficiency of the evidence supporting the jury's verdict. Specifically, he contends that the State failed to establish beyond a reasonable doubt the identity of the perpetrator.

## 1. Factual Background

The appellant's case proceeded to trial on March 28, 1995. At trial, the State presented the testimony of Susan King, an assistant manager at Home Medical Equipment, located in St. Joseph's Hospital in downtown Memphis. On December 8, 1993, Ms. King was working at the front counter of the store. A cash register containing approximately one hundred dollars was located at the front counter. Four other employees, including Kelley Holmes, the billings and collections coordinator, were present in the store. At approximately 3:00 p.m., as Ms. King was talking with a customer, a man entered the store. He approached Ms. King and demanded that she give him money. His hand was inserted in his jacket pocket, and he informed Ms. King that he had a gun in his pocket. Ms. King unlocked and opened the cash register, and the man removed the money. Ms. King testified that, at this point, three employees left the store through a back door. Kelley Holmes emerged from one of the offices and whispered Ms. King's name. She and Ms. King then exited the store through the back door. Ms. Holmes entered a nearby office and asked that someone call the police. Subsequently, as Ms. King and Ms. Holmes searched for a security guard, they again observed the perpetrator crossing the hospital parking lot and entering the hospital.

2

At trial, Ms. King identified the appellant as the person who had committed the robbery. Ms. King testified that the store was "very well lit." The front counter of the store is not more than fifteen or twenty feet from the door through which the appellant entered. Moreover, the appellant stood very close to Ms. King as he removed the money from the cash register. Ms. King had ample opportunity to observe the appellant's face and his clothing. According to Ms. King, the appellant was wearing dirty blue jeans, a light-colored shirt, a windbreaker, and a baseball cap. The appellant was unshaven, and his facial hair was turning gray. He appeared to be in his late thirties or early forties.[1] The appellant appeared to have been drinking heavily.

The police arrived approximately five minutes after the robbery. Ms. King gave the police the above description of the appellant. Approximately twenty or thirty minutes later, the police brought the appellant to the scene of the robbery. Ms. King identified the appellant as the perpetrator of the robbery. At this point, the appellant was wearing the same clothes that he had worn during the robbery. Ms. King testified at trial that there was no doubt in her mind that the appellant was the person who had committed the robbery.

Kelley Holmes also testified. She recounted that, on December 8, 1993, at approximately 3:00 p.m., she heard someone enter the store. She was sitting at her desk, which was in an area of the store partitioned from the customer service area. As she approached the customer service area, she observed a man talking to Ms. King. She overheard him tell Ms. King that he had a gun and order her to give him money. She stood still for several moments and then returned to her desk. She indicated to her fellow employees that they should leave the store through the back door. She then once more looked into the

---

[1]Officer Thomas Arnold testified that, when he detained the appellant, he ascertained that the appellant was forty-one.

customer service area, capturing Ms. King's attention. The perpetrator did not notice Ms. Holmes, as he was removing money from the cash register. Both Ms. Holmes and Ms. King quickly exited the store. Ms. Holmes entered a nearby office and asked someone to call the police. After leaving this office, she again observed the robber walking across the hospital parking lot.

At trial, Ms. Holmes identified the appellant as the person who had robbed Home Medical Equipment. She stated that, following the robbery, on the telephone, she gave the police the following description of the perpetrator:

> A black male; he was not a large frame, 150/160-something pounds -- not a large frame; had blue jeans on that were real grungy looking -- dirty blue jeans; had a dark-colored coat on with a white shirt -- a light shirt underneath it, and had a cap on. ... and had dark shoes on.

A few minutes after Ms. Holmes gave the police this description, the police arrived. Thereafter, approximately thirty minutes after the offense, the police brought the appellant to the hospital, and Ms. Holmes identified the appellant as the person who had robbed the store. Ms. Holmes stated at trial that there was no doubt in her mind that the appellant was the perpetrator.

Ms. Holmes testified that, during the robbery, she stood between three and four feet from the appellant. The store was lit with fluorescent light bulbs. Moreover, the store had large windows and the window shades were open. Ms. Holmes had ample opportunity to observe the appellant's face and his clothing.

Officer Thomas Arnold, a patrolman with the Memphis Police Department, also testified. He stated that, on December 8, 1993, at approximately 3:00 p.m., the dispatcher notified him of a robbery that had occurred at Home Medical Equipment, located inside St. Joseph's Hospital in the downtown area. Officer Arnold began to search the area, and, between eight and fifteen minutes later, a short distance from St. Joseph's hospital, he observed an individual who

4

matched the description broadcast by the dispatcher. Arnold detained the suspect, whom Arnold identified at trial as the appellant.[2] Arnold testified that, although there were other people in the vicinity, no one approached him and the appellant or attempted to speak with him, nor did the appellant indicate that he was accompanied by anyone. The appellant denied committing any robbery. Arnold searched the appellant for weapons, but the appellant was unarmed. Arnold then transported the appellant to the scene of the robbery, where Ms. King and Ms. Holmes identified the appellant. Neither witness hesitated in identifying the appellant as the perpetrator of the robbery. At this point, the officer unsuccessfully searched the appellant for money. The officer testified that, between the hospital and the location where the appellant was initially detained, there are vacant lots that are "grown up" and littered with trash, where someone might hide a gun or money.

The appellant did not testify at trial. He did introduce the testimony of Gregory Jones, his stepbrother. Mr. Jones testified that the appellant was with him on December 8, 1993, from 10:00 a.m. until the appellant was detained by Officer Arnold. Indeed, Jones testified that he was present when the appellant was first detained. Jones testified that he approached and spoke with the officer.

## 2. Analysis

The appellant challenges the sufficiency of the identification evidence. A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant must establish that the evidence presented at trial was so deficient that no

---

[2]Arnold confirmed that, when he approached the appellant, he could smell "a moderate odor" of alcohol. Gregory Jones, the appellant's stepbrother, testified that he and the appellant had been drinking wine on the day of the offense.

5

"reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). Guilt may be predicated upon direct evidence, circumstantial evidence, or both. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995).

An appellate court may neither reweigh nor reevaluate the evidence when determining its sufficiency. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). "A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. Id. See also State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992).

"It is well established that the identification of a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof." State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). See also State v. Williams, No. 01C01-9505-CR-00146 (Tenn. Crim. App. at Jackson, November 12, 1996); State v. Rollins, No. 03C01-9308-CR-00250 (Tenn. Crim. App. at Knoxville), perm. to appeal denied, (Tenn. 1995).[3] Moreover, this court has held

---

[3]Again, the trial occurred on March 28, 1995, prior to our supreme court's opinion in State v. Dyle, 899 S.W.2d 607 (Tenn. 1995). That opinion was released on May 15, 1995. In Dyle, 899 S.W.2d at 612, the Supreme Court promulgated an identity instruction which must be given to the jury by the trial court when identification is a material issue and it is requested by defense counsel. In the instant case, because the trial occurred prior to the Dyle opinion, defense counsel did not request and the trial court did not give the Dyle instruction. Rather, the trial court instructed the jury:

that the identification testimony of a victim is, by itself, sufficient to support a conviction. Id. We conclude that the evidence adduced at trial is sufficient.

Accordingly, we affirm the judgment of the trial court.

_____
DAVID G. HAYES, Judge


CONCUR:


_____
GARY R. WADE, Judge


_____
WILLIAM M. BARKER, Judge

---

The Court charges you that the identity of the defendant must be proven in the case on the part of the State to your satisfaction beyond a reasonable doubt. In other words, the burden of proof is on the State to show that the defendant now on trial before you is the identical person who committed the crime with which he is charged. In considering the identity of a person, the Jury may take into consideration all the facts and circumstances in the case.

The Court further charges you that if you are satisfied from the whole proof in the case, beyond a reasonable doubt, that the defendant Leon B. Franklin committed the crime charged against him, and you are satisfied, beyond a reasonable doubt that he has been identified as the person who committed the crime charged, then it would be your duty to convict him. On the other hand, if you are not satisfied with the identity from the proof, or you have a reasonable doubt as to whether he has been identified from the whole body of the proof in the case, then you should return a verdict of not guilty.

Dyle is applicable both to those cases on appeal when the opinion was released and to those cases tried after that date. Id. The appellant filed his notice of appeal on May 22, 1995. Thus, the case was not "on appeal" when the opinion in Dyle was released. Nevertheless, applying the principles set forth in Dyle, in the context of the evidence in this case and the above instruction, we conclude that any error was harmless. Id.; Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

7