**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Raul RAMIREZ–RIZO,**
**Defendant-Appellant.**

**No. 86–1502.**

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1987.

R. Clark Adams, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Sidney Powell, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge,
GOLDBERG, and GEE, Circuit Judges.

CLARK, Chief Judge:

Raul Ramirez-Rizo challenges the district court's refusal to give his requested instruction on eyewitness identification. We affirm.

## I.

Ramirez-Rizo was indicted on three counts of aiding and abetting the illegal transportation of aliens in violation of 8 U.S.C. § 1324(a)(2) and 18 U.S.C. § 2. One count was dismissed because the alien was not available to testify. At trial, Juan Jaime Ramirez-Santana, Ramirez-Rizo's cousin, testified pursuant to a plea agreement with the government. The aliens, Martin Olvera-Tovar and Daniel Olvera-Tovar, also testified at trial.

Ramirez-Santana testified that he and Ramirez-Rizo arranged with Ramirez-Rizo's brother to pick up a group of illegal aliens and transport them in Ramirez-Santana's car. Ramirez-Santana and Ramirez-Rizo arrived at the pick-up point, and after a short wait, the aliens showed up with Ramirez-Rizo's brother. As the aliens started getting into the car, an immigration agent arrived on the scene. The aliens scattered. Ramirez-Santana was arrested after a chase; an alien was found in the trunk of his car.

The two aliens testified that they had no legal right to be in the United States. They had been guided across the river and then waited to be picked up in a car. They paid $500 to be smuggled into the United States. On cross-examination, both aliens identified Ramirez-Rizo as their guide, although both admitted that they made the crossing at night and only saw their guide for a short time. They also stated that they did not see the guide while he was watching for the car, and that they waited for about two hours before the car arrived.

In his closing argument, defense counsel argued that Ramirez-Santana was not a credible witness because he testified pursuant to a plea agreement, that the identification of Ramirez-Rizo by the aliens was unreliable, and that the testimony of the aliens conflicted with the testimony of Ramirez-Santana. The district court instructed the jury on the dangers of accomplice testimony and gave a general credibility charge. It refused to give an instruction on eyewitness identification requested by Ramirez-Rizo.[1] The jury found Ramirez-Rizo guilty on both counts and he appeals. We affirm.

## II.

Ramirez-Rizo's sole contention on appeal is that the district court erred in failing to give his requested instruction on identification testimony. The government responds that the district court properly refused to give the instruction because identification was not an issue in the case. The government reasons that the aliens' testimony was not necessary to convict Ramirez-Rizo because he was tried only for aiding and abetting. It also maintains that the aliens'

---

1. The requested instruction reads as follows:

    In any criminal case the Government must prove not only the essential elements of the offense or offenses charged, as hereafter defined, but must also prove, of course, the identity of the Defendant as the perpetrator of the alleged offense or offenses.

    In evaluating the identification testimony of a witness you should consider all of the factors already mentioned concerning your assessment of the credibility of any witness in general, and should also consider, in particular, whether the witness had an adequate opportunity to observe the person in question at the time or times about which the witness testified. You may consider, in that regard, such matters are the length of time the witness had to observe the person in question,

    the prevailing conditions at that time in terms of visibility or distance and the like, and whether the witness had known or observed the person at earlier times.

    You may also consider the circumstances surrounding the identification itself including, for example, the manner in which the Defendant was presented to the witness for identification, and the length of time that elapsed between the incident in question and the next opportunity the witness had to observe the Defendant.

    If, after examining all of the testimony and evidence in the case, you have a reasonable doubt as to the identity of the Defendant as the perpetrator of the offense charged, you must find the Defendant not guilty.

testimony that Ramirez-Rizo was their guide in the crossing into the United States was merely complementary to the testimony of Ramirez-Santana that Ramirez-Rizo drove with him to the pick-up point. The government contends that the two versions did not conflict since up to two hours passed from the time the aliens reached the pick-up point until the time the car driven by Ramirez-Santana arrived. Therefore, Ramirez-Rizo could have guided the aliens across the river, left them at the pick-up point, and returned later in the car with Ramirez-Santana.

■ The government's argument is not persuasive. Although the aliens' testimony was not the only evidence on which a jury could have convicted Ramirez-Rizo, a reasonable jury might have relied on the aliens' identification in reaching its verdict. Indeed, the government in its closing argument invited the jury to convict Ramirez-Rizo of aiding and abetting solely on the basis of the aliens' identification of him as their guide. Moreover, a reasonable jury could have found a conflict between the testimony of Ramirez-Santana and the testimony of the aliens. For example, the aliens identified Ramirez-Rizo as their guide while Ramirez-Santana testified that the brother of Ramirez-Rizo was the guide. Finally, if the jury did not credit Ramirez-Santana's testimony it could still have convicted on the basis of the aliens' identification regardless of whether Ramirez-Santana's testimony conflicted with the aliens' testimony. The aliens' identification of Ramirez-Rizo clearly was an issue in the case.

Nevertheless, the refusal to give the requested identification instruction was not reversible error. Ramirez-Rizo does not challenge the charge given as containing incorrect statements. Rather, he contends that the charge was inadequate. He claims that the refusal to give the requested instruction prevented him from relying on the court's instruction on identification to strengthen his closing argument. He relies on *United States v. Fooladi*, 746 F.2d 1027 (5th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985),

in which the court stated that "a defensive theory is best *expressed by the judge.*" *Id.* at 1032 (emphasis in original). As a result of the failure to instruct, according to Ramirez-Rizo, his theory of defense was not completely placed before the jury.

We review a district court's refusal to elaborate upon a correct instruction under an abuse of discretion standard. *United States v. Ferro*, 709 F.2d 294, 295 (5th Cir.1983). "[A]n abuse of discretion occurs only when the failure to give a requested instruction serves to prevent the jury from considering the defendant's defense." *United States v. Hunt*, 794 F.2d 1095, 1097 (5th Cir.1986). In deciding whether a defendant's theory of defense was adequately submitted to the jury, we look to the trial as a whole including the arguments of counsel, not to determine whether the requested instruction would have bolstered the argument, but rather to determine whether the charge as supplemented by the argument adequately presented the defense to the jury. *See United States v. Gray*, 751 F.2d 733, 735–36 (5th Cir.1985).

*Fooladi* is fully consistent with this approach. In *Fooladi* the court upheld the refusal to give a good faith instruction because the instructions in combination with the closing argument of defense counsel fully presented Fooladi's defense to the jury. 746 F.2d at 1030. The court rejected a rule of per se reversal for failure to instruct the jury explicitly on good faith as a defense. *Id; see also Gray*, 751 F.2d at 735–36. The discussion in *Fooladi* expressing the importance of jury instructions was an admonishment to district courts to exercise their discretion carefully. It cannot be converted into a requirement to instruct in particular words.

■ Ramirez-Rizo would urge us to follow other circuits that have reversed convictions for failure to give an identification instruction without considering whether the arguments of counsel in combination with the charge adequately presented the issue to the jury. *See, e.g., United States v. Hodges*, 515 F.2d 650, 653 (7th Cir.1975); *United States v. Holley*, 502 F.2d 273, 277

(4th Cir.1974). That approach is foreclosed in this circuit by *United States v. Rhodes,* 569 F.2d 384, 389–90 (5th Cir.), *cert. denied,* 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978). Although *Rhodes* is distinguishable on its facts from the present case, it establishes that the refusal of an instruction on eyewitness testimony is to be analyzed in the context of the trial as a whole including argument. *Rhodes,* 569 F.2d at 389–90; *accord United States v. Ofarril,* 779 F.2d 791, 792 (2d Cir.1985) (per curiam), *cert. denied,* —— U.S. ——, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986); *United States v. Masterson,* 529 F.2d 30, 32 (9th Cir.), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976). The key consideration is whether the failure to give the instruction prevented the jury from considering the defendant's theory of defense. *See Rhodes,* 569 F.2d at 389–90.

█ In this case the refusal to give the requested identification instruction did not prevent the jury from considering Ramirez-Rizo's theory of defense. The district court instructed the jury that in judging the credibility of witnesses it should consider "the witness' manner of testifying and opportunity to observe and acquire knowledge concerning the facts about which the witness has testified." The court told the jury to receive accomplice testimony with caution and to weigh the testimony carefully. It also instructed the jury on the elements of the offense and on the necessity of proof beyond a reasonable doubt. In addition, defense counsel argued to the jury that the aliens saw their guide only for a short time in the middle of the night. He pointed to inconsistencies between the aliens' prior descriptions of their guide and the appearance of Ramirez-Rizo. Viewing the trial as a whole, the identification issue was adequately presented by the proof, by cross-examination, by argument, and by the court's charge to the jury. While giving the requested instruction may have been the better practice, *see Fooladi,* 746 F.2d at 1031–32; *Rhodes,* 569 F.2d at 389, under the circumstances of this case, refusing the instruction was not an abuse of discretion.

AFFIRMED.