STATE of Tennessee, Appellant,

v.

Dennis Lee DYLE and William
Whitfield Ellis, Appellees.

Supreme Court of Tennessee,
at Knoxville.

May 15, 1995.

Charles W. Burson, Atty. Gen. & Reporter, Michael E. Moore, Sol. Gen., and Ellen Pollack, Asst. Atty. Gen., Nashville, for appellant.

Katherine J. Kroeger, Asst. Public Defender, Clinton, for appellee Dennis Lee Dyle.

Billy P. Sams, Oak Ridge, for appellee William Whitfield Ellis.

## OPINION

BIRCH, Justice.

In reversing the trial court's judgment which convicted Dennis Dyle and William Whitfield Ellis of aggravated robbery,[1] the Court of Criminal Appeals held that "in any criminal case in which the issue of identity is raised by the evidence and is material to the defense the detailed identification instruction first devised in *Telfaire* ... must be given."

We granted the State's application to appeal. At issue is whether the *Telfaire* instruction shall be established as a part of the law of this state.

After painstaking review and thorough consideration of the issue, we find that the instruction on identification in current use in Tennessee does not go far enough. Concomitantly, we find that the *Telfaire* instruction goes too far. Thus, by our holding in this case, we strike for the middle ground, and in so doing, we are constrained to reverse the judgment of the Court of Criminal Appeals and reinstate the trial court's judgment.

## I

The salient facts of record show that on December 4, 1991, at approximately 3 a.m., two young men approached Michele Garcia, a clerk at the Hilltop Pantry in Oak Ridge, and demanded money. Garcia refused at first, but when one of the men pointed a gun at her, she gave him money and food stamps.

After the encounter, Garcia called the police. Upon their arrival, she told an officer that she had been able to get a good look at the assailants. She described them as white males between the ages of fifteen and seventeen. One, she stated, wore a jean jacket and had shoulder length light brown hair.

The other, the gunman, wore a leather jacket and jeans and had short black hair. She stated that each of the assailants was at her eye level as she faced them from behind the counter while standing on a platform which afforded her a better view.

Garcia had seen the perpetrators previously. On December 1, 1991, three days before the robbery, the two of them and a third person had come to the store ostensibly to buy cigarettes. No one among them could produce identification, so Garcia refused to sell them the cigarettes. These three were later identified as David Dyle, Dennis Dyle, and William Ellis.

The investigators presented some photographs to Garcia. From them, she selected the photograph of David Dyle as being one of the perpetrators. She noted that Dyle was depicted in the same blue jean jacket he had worn during both of her encounters with him.

Investigators later determined that the photograph of Dyle that Garcia selected had been taken December 1, 1991, following his arrest on outstanding warrants. He remained in custody through December 4, 1991, at least. Consequently, he could not have been inside the Hilltop Pantry at the time of the robbery. Armed with this information, investigators arrested David Dyle's identical twin brother, Dennis Dyle, and charged him as one of the assailants.

Garcia also observed Ellis three days after the robbery when he came to the pantry to purchase gasoline. She immediately recognized him as the other assailant and called the police. She later identified Ellis' photograph in a photographic lineup.

At trial, Garcia positively identified Dennis Dyle and Ellis as the assailants. She testified that there was no doubt in her mind about her identification of Dennis Dyle and Ellis.

Both Dyle and Ellis presented witnesses who supported their alibi defense.

At the close of all the proof, Dyle's counsel requested that the trial judge give the *Telfaire* instructions to the jury. The trial

1. Tenn.Code Ann. § 39–13–402 (1991).

judge refused and instead gave the pattern jury instruction on identity.[2] It reads as follows:

The State must prove beyond a reasonable doubt the defendant's identity as the person who committed the crime.

If after considering all the evidence in this case you the jury are not satisfied beyond a reasonable doubt that the defendant or defendants is or are the person or persons who committed this crime, then you must find him or them not guilty.

After considering all the evidence and the instructions (which included the identification instruction set out above), the jury convicted both defendants of aggravated robbery.

The defendants appealed of right to the Court of Criminal Appeals and obtained the reversal we have earlier discussed.

## II

The Court of Criminal Appeals has previously grappled with the *Telfaire* issue in several cases, and the panels' holdings are not consistent. We now address this important issue as a matter of first impression and begin with a general discussion of the nature of eyewitness testimony.

The United States Supreme Court recognized the problematical nature of eyewitness testimony in the case of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In writing the majority opinion, Justice Brennan said:

The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: "What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent—not due to the brutalities of ancient criminal procedure."

*Id.* at 228, 87 S.Ct. at 1933 (citation omitted).

Again, Justice Blackmun, in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53

L.Ed.2d 140 (1977), expressed concern that the jury not hear eyewitness testimony unless the testimony has aspects of reliability. In *Neil v. Biggers*, the Court discussed factors to be considered in evaluating identification testimony:

(1) the opportunity the witness had to view the defendant at the time of the crime,

(2) the witness's degree of attention,

(3) the accuracy of the witness's prior description of the criminal,

(4) the level of certainty demonstrated by the witness at the confrontation, and

(5) the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

Other scholars agree that eyewitness testimony poses special problems in the administration of justice. As one leading expert stated:

[o]n the one hand, eyewitness testimony is very believable and can wield considerable influence over the decisions reached by a jury; on the other hand, eyewitness testimony is not always reliable. It can be flawed simply because of the normal and natural memory processes that occur whenever human beings acquire, retain, and attempt to retrieve information.

Elizabeth F. Loftus, *Eyewitness Testimony* 7 (1979). *See also* Elizabeth F. Loftus & James M. Doyle, *Eyewitness Testimony: Civil and Criminal* (1987); Gary L. Wells, *et al, Accuracy, Confidence, and Juror Perceptions in Eyewitness Identification*, 64 J. Applied Psychology 440 (1979); Note, *Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification*, 29 Stan.L.Rev. 969 (1977).

Many experts have found that eyewitness testimony can be influenced by environmental conditions, the observer's state of stress, the mental set of the observer, race, age, sex, and suggestion by the questioner. Wayne T. Westling, *The Case for Expert Witness Assistance to the Jury in Eyewitness Identifi-*

2. T.P.I. (3d ed.) 42.05 (1993).

*cation Cases,* 71 Or.L.Rev. 93 (1992). *See also* Roy S. Malpass and Jerome Kravitz, *Recognition for Faces of Own and Other Race,* 13 J. Personality and Social Psychology 330, 332 (1969).

While there appears to be widespread agreement among the experts that the accuracy of eyewitness identification may be affected by several factors, there has been no agreement in the courts as to how these factors should be reflected in the jury instructions (if at all) and reconciled with the long-standing view that the jury does not need extensive instructions on credibility.

One such, and perhaps the first major, attempt at reconciliation was made by the District of Columbia Circuit Court of Appeals in the case of *United States v. Telfaire,* 469 F.2d 552, 557 (D.C.Cir.1972). In *Telfaire,* the court approved the prospective use of a special jury instruction now universally described as the *Telfaire* instruction.[3]

> The *Telfaire* court stated its rationale as: The presumption of innocence that safeguards the common law system must be a premise that is realized in instruction and not merely a promise. In pursuance of that objective, we have pointed out the importance of and need for a special instruction on the key issue of identification, which emphasizes to the jury the need for finding that the circumstances of the identification are convincing beyond a reasonable doubt.

*Id.* at 555 (referring to *McKenzie v. United States,* 126 F.2d 533 (D.C.Cir.1942)).

### III

After *Telfaire,* other jurisdictions have developed three general approaches to remedy the problems perceived to be inherent in eyewitness identification testimony. Some jurisdictions have accepted the rationale underlying *Telfaire* and have required or encouraged a particularized instruction to be given. *See United States v. Fernandez,* 456 F.2d 638 (2d Cir.1972) (cautionary instructions required when identity is a critical issue); *United States v. Holley,* 502 F.2d 273 (4th Cir.1974) (holding that *Telfaire*-like in-

structions are to be given); *United States v. Scott,* 578 F.2d 1186 (6th Cir.) *cert. denied,* 439 U.S. 870, 99 S.Ct. 201, 58 L.Ed.2d 182 (1978) (*Telfaire*–like instruction is to be given when the issue of identity is critical); *United States v. Hodges,* 515 F.2d 650 (7th Cir.1975) (court requires that instructions which are "substantially equivalent" to *Telfaire* instructions be given); *United States v. Cain,* 616 F.2d 1056 (8th Cir.1980) (failure to give *Telfaire* instructions when the sole issue was identification was reversible error); *People v. Wright,* 45 Cal.3d 1126, 248 Cal.Rptr. 600, 755 P.2d 1049 (1988) (approving a condensed *Telfaire* charge and requiring that such an instruction be given when requested in a case in which identification is a crucial issue and there is no substantial corroborative evidence); *State v. Willis,* 240 Kan. 580, 731 P.2d 287 (1987); *State v. Warren,* 230 Kan. 385, 635 P.2d 1236 (1981) (holding where eyewitness identification is a critical part of the prosecution's case and there is serious doubt about the reliability of the identification, a cautionary instruction should be given. *Warren* precipitated the creation of a pattern instruction in Kansas that tracks the language suggested in *Telfaire.* The *Willis* court refused to expand on the instruction to include "transracial identification," "unconscious transference," "after-acquired experience," and the "feedback" factor.); *McDoulett v. State,* 685 P.2d 978 (Okla.Crim.App. 1984) (Oklahoma has adopted a *Telfaire*-like pattern jury instruction. This case held that in cases where the eyewitness identification is a critical element of the prosecution's case and serious questions exist concerning the reliability of that identification, the cautionary instruction should be given).

Still other jurisdictions leave the decision to the discretion of the trial court. *See United States v. Masterson,* 529 F.2d 30 (9th Cir.) *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976) (applies an abuse of discretion standard to the alleged error of failing to give particularized instructions); *Jones v. State,* 450 So.2d 165 (Ala.Crim.App. 1983) (holding that whether to give a *Telfaire* instruction was in the discretion of the trial court, and that the trial court had not abused

---

**3.** A copy of the *Telfaire* model instructions can be found at Appendix A.

its discretion under the facts), *aff'd* 450 So.2d 171 (Ala.1984); *State v. Cerilli,* 222 Conn. 556, 610 A.2d 1130 (1992) (holding identification instructions, although not constitutionally required, might be warranted by the facts of a particular case if the jury would otherwise be misled); *State v. Padilla,* 57 Haw. 150, 552 P.2d 357 (1976) (holding the giving of special instructions on the issue of identification is within the discretion of the trial judge); *State v. Hohle,* 510 N.W.2d 847 (Iowa 1994) (upholding the trial court's rejection of a request for a *Telfaire* instruction. Although Iowa has an approved jury instruction that is in accord with *Telfaire,* there was no serious issue in this case with regard to the identity of the defendant, and the general instructions on credibility of witnesses was held sufficient); *Commonwealth v. Moffett,* 383 Mass. 201, 418 N.E.2d 585 (1981) (although Massachusetts also has a jury instruction modeled after *Telfaire,* the court upheld the trial court's denial of defendant's request for such instruction where the trial court adequately covered, in other instructions, the possibility that the show-up in this case was suggestive, i.e., "are you satisfied that the identification was the product of [the witness'] own recollection [and not] a police officer saying, 'there's the man; do you identify him'"); *State v. Higgins,* 592 S.W.2d 151 (Mo.1979) (in this case where the defendant had given a full confession admitting his part in the crime, the court upheld the trial court's refusal to give a cautionary instruction on the issue of identity); *State v. Guster,* 66 Ohio St.2d 266, 421 N.E.2d 157 (1981) (holding that *Telfaire* instructions might be appropriate depending on the facts of the case, but that such decision was within the trial court's discretion); *State v. Kasper,* 137 Vt. 184, 404 A.2d 85 (1979) (holding that there was no abuse of discretion in the trial court's failure to give a cautionary instruction on the issue of identity when the facts relevant to the identification were fully developed at trial, the identification issue was covered by both sides in closing argument, and the trial court instructed the jury on burden of proof and credibility of witnesses, even though the better practice would have been to give some form of identification instruction); *State v. Payne,* 167 W.Va. 252,

280 S.E.2d 72 (1981) (holding that a *Telfaire* instruction may be appropriate in cases where the State's case rests largely upon the uncorroborated identification testimony of a witness, but that giving such an instruction was discretionary with the trial court).

Finally, some jurisdictions have rejected a requirement for *Telfaire*-like instructions. The courts in those jurisdictions hold that general instructions on credibility and the theory of defense are adequate. *See United States v. Ramirez–Rizo,* 809 F.2d 1069 (5th Cir.1987) (trial court abuses its discretion only if its omission in jury instructions prevents the jury from considering the theory of defense); *McGee v. United States,* 402 F.2d 434 (10th Cir.1968) *cert. denied,* 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969) (a general instruction on the burden of proving identity is adequate); *State v. Valencia,* 118 Ariz. 136, 575 P.2d 335 (1977) (finding that the instructions on credibility of witnesses and alibi were sufficient); *Conley v. State,* 270 Ark. 886, 607 S.W.2d 328 (1980) (finding that such an instruction constituted an impermissible comment on the evidence); *Hopkins v. State,* 582 N.E.2d 345 (Ind.1991) (holding that Indiana law was distinctly biased against jury instructions which single out eyewitness testimony for emphasis); *Nevius v. State,* 101 Nev. 238, 699 P.2d 1053 (1985) (holding that general instructions on credibility of witnesses and the burden of proof were sufficient); *State v. Paige,* 316 N.C. 630, 343 S.E.2d 848 (1986) (holding that the burden of proof instruction was adequate); *State v. Classen,* 31 Or.App. 683, 571 P.2d 527 (1977) (holding that *Telfaire* instructions overemphasized the identification issue and amounted to a comment on the evidence), *rev'd on other grounds,* 285 Or. 221, 590 P.2d 1198 (1979); *State v. Payette,* 557 A.2d 72 (R.I.1989) (holding that burden of proof instruction was sufficient); *State v. Simmons,* 308 S.C. 80, 417 S.E.2d 92 (1992) (holding that the alibi and burden of proof instructions were sufficient in this case, *but* admonishing the trial courts in single witness identification cases that the jury should be instructed that the burden of proving the identification of the defendant rests with the state); *State v. Laureano,* 682 P.2d 889 (Wash.1984); *Pearson v. State,* 811 P.2d 704

(Wyo.1991) (holding that general instructions on reasonable doubt and credibility of witnesses are sufficient).

## IV

Tennessee has been aligned with jurisdictions which take the position last mentioned; that is, that the pattern instructions on burden of proof and identify are sufficient, by implication rejecting *Telfaire*. However, in the case under review, the Court of Criminal Appeals embraced the rationale of *Telfaire* and its holding and, by its opinion, would establish *Telfaire* as the law of Tennessee.

## V

■ We begin by acknowledging that accuracy of eyewitness testimony is affectable by the usual universal fallibilities of human sense perception and memory. This phenomenon, which could obviously affect other forms of evidence also, is potentialized by the fact that this testimony is prone to many outside influences (police interrogations, line-ups, etc.) and is often decisive. *See* Loftus, *Eyewitness Identification* 7 (1979).

■ In light of this acknowledgment, we find that the pattern identity instruction traditionally given in Tennessee is not adequate in cases where identity is a material issue. However, we also find that the *Telfaire* instruction, adopted by the Court of Criminal Appeals, is not appropriate because it impermissibly comments on the evidence; thus, invading the province of the jury.

■ Thus, we promulgate the follow instruction:

One of the issues in this case is the identification of the defendant as the person who committed the crime. The state has the burden of proving identity beyond a reasonable doubt. Identification testimony is an expression of belief or impression by the witness, and its value may depend upon your consideration of several factors. Some of the factors which you may consider are:

(1) The witness' capacity and opportunity to observe the offender. This includes, among other things, the length of time available for observation, the distance from which the witness observed, the lighting, and whether the person who committed the crime was a prior acquaintance of the witness;

(2) The degree of certainty expressed by the witness regarding the identification and the circumstances under which it was made, including whether it is the product of the witness' own recollection;

(3) The occasions, if any, on which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with the identification at trial; and

(4) The occasions, if any, on which the witness made an identification that was consistent with the identification at trial, and the circumstances surrounding such identifications.

Again, the state has the burden of proving every element of the crime charged, and this burden specifically includes the identity of the defendant as the person who committed the crime for which he or she is on trial. If after considering the identification testimony in light of all the proof you have a reasonable doubt that the defendant is the person who committed the crime, you must find the defendant not guilty.

■ We conclude that this instruction must be given when identification is a material [4] issue and it is requested by defendant's counsel. Failure to give this instruction under these circumstances will be plain error. If identification is a material issue and the defendant does not request the instructions, failure to give it will be reviewable under a Rule 52 harmless error standard. This ruling is applicable to cases now on appeal and to those cases tried after the release of this opinion.

■ We do not apply this new rule to the case under submission. First, the instruc-

---

4. Identity will be a material issue when the defendant puts it at issue or the eyewitness testimo- ny is uncorroborated by circumstantial evidence.

tion given at trial was correct under the law then in effect. Second, we do not believe that the failure to give the *Telfaire* instruction in the case under submission affected the results of the trial and now warrants a reversal of the conviction.

It results that the judgment of the Court of Criminal Appeals is reversed; the judgment of the trial court is reinstated.

ANDERSON, C.J., DROWOTA and REID, JJ., and O'BRIEN, Special Justice, concur.

### APPENDIX A

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, wheth-

er the witness had had occasion to see or know the person in the past.

[In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.][1]

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

[You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.]

[(3) You make [sic] take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in this testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the

---

1. Sentence in brackets ([ ]) to be used only if appropriate. Instructions to be inserted or mod- ified as appropriate to the proof and contentions.

614

crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

*United States v. Telfaire,* 469 F.2d 552, 558–59, Appendix (D.C.Cir.1972).