# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs April 10, 2012

## STATE OF TENNESSEE v. DENEY BROCKMAN

**Appeal from the Criminal Court of Shelby County**
**No. 09-08006      James C. Beasley, Jr., Judge**

---

**No. W2011-01939-CCA-R3-CD  - Filed June 28, 2012**

---

Deney Brockman ("the Defendant") was convicted by a jury of burglary of a building other than a habitation.  After a hearing, the trial court sentenced the Defendant as a career offender to twelve years in the Tennessee Department of Correction.  In this appeal, the Defendant challenges the sufficiency of the evidence supporting his conviction.  Upon our thorough review of the record and applicable law, we hold that the evidence is sufficient to support the Defendant's conviction.  Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Stephen Bush, Chief Public Defender; Harry E. Sayle III, Assistant Public Defender (on appeal); Jim Hale, Assistant Public Defender (at trial), Memphis, Tennessee, for the appellant, Deney Brockman.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Amy Weirich, District Attorney General; and Pam Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Defendant was charged with one count of burglary of a building other than a habitation with intent to commit theft, a Class D felony.  See Tenn. Code Ann. § 39-14-402(a)(1), (c) (2006).  At the Defendant's jury trial, Officer Keith Rogers of the Memphis Police Department testified that, on September 6, 2009, he was working the 5:00 p.m. to 1:00

a.m. shift on Uniform Patrol in Memphis. He was working with a trainee, who was driving the squad car. As they were driving, Officer Rogers heard an alarm. He instructed the trainee to drive down Vance and, as they did so, the alarm became louder. On their way, Officer Rogers "saw a male black pushing a shopping cart." The man was "just east of Walnut on Vance" and "traveling westbound on Vance." Officer Rogers was headed east on Vance.

Officer Rogers testified that he looked at the man and noticed that he "had a shopping cart full of bottles." They drove a short distance further and discovered that the source of the alarm was W. W. Liquor. Officer Rogers "kind of put it together" and instructed his trainee to turn the squad car around and return to the man they had earlier passed. Officer Rogers stated that the distance between the store and the location where they had seen the man was forty to forty-five yards.

As they reapproached the man with the cart, Officer Rogers stated, the man "saw that we were coming toward him, and he took off running." At this point, the man was at the intersection of Vance and Walnut. According to Officer Rogers, about two or three minutes had elapsed since he first saw the man. Officer Rogers testified that he was "certain" that the man he saw running was the same person he first saw pushing the shopping cart. The man was still pushing the cart when they came back in his direction.

The man ran southbound on Walnut from Vance, and Officer Rogers got out of the squad car and ran after him. The chase continued for about a hundred yards, during which Officer Rogers instructed the man, "Police, freeze, police, freeze, get on the ground." The man ignored Officer Rogers and ran to a nearby warehouse, where there was a fence. The man tried to jump the fence, but Officer Rogers held him at gunpoint until he returned to the ground. Officer Rogers then handcuffed and searched the suspect.

Officer Rogers testified that they recovered the shopping cart, in which they found liquor bottles, a sledge hammer, wire cutters, and "some other miscellaneous tools." They returned to the liquor store and, once the owner arrived, entered the store. At that point, they discovered that a large hole had been knocked into the back wall. They also discovered that a chain-link fence on the side of the store had been cut from its pole. In the ground on the side of the building were "tire marks from where the shopping cart was moved back and forth." Photographs of the building, fence, ground, and shopping cart were admitted without objection. Officer Rogers also identified the Defendant as the man he saw pushing the shopping cart and whom he subsequently chased and took into custody.

Officer Leroy Williamson of the Memphis Police Department testified that he was "new on the job" at the time of the instant episode. On that night, he was riding with Officer Rogers, his field training officer. They responded to the alarm at about 11:00 or 11:30 p.m.

as they were driving eastbound on Vance. As they approached the intersection with Walnut, they stopped and Officer Williamson "saw an individual walking southbound on Walnut." This person was pushing a shopping cart. Officer Williamson could tell that the person was an African-American man. The man was wearing "a light brown, tannish, sort of warm-up set type deal, like a warm-up suit." The officers continued through the intersection and reached the liquor store in "five seconds maybe." Officer Williamson estimated the distance from the intersection to the liquor store as two hundred to two hundred and fifty feet.

When they realized that the alarm was coming from the liquor store, Officer Rogers instructed him to turn around and drive back to the man's location so they could check him out. Officer Williamson drove back to the intersection, turned left onto Walnut, and they "saw the basket sitting in the street." He drove further and they saw the suspect running. He recognized the clothing that the man was wearing. Officer Rogers got out of the car and gave chase. Officer Williamson followed after parking the car. He saw the suspect trying to climb a fence. Officer Rogers drew his weapon and advised the suspect to stop. Officer Williamson then "cuffed him up, patted him down, and [they] took him back to the squad car." The officers then returned to the liquor store and subsequently "went back and secured the shopping cart."

According to Officer Williamson, only about ten seconds elapsed between their first and second sightings of the suspect. Officer Williamson identified the Defendant as the suspect he initially saw pushing the shopping cart and whom they later apprehended.

On cross-examination, Officer Williamson estimated that the Defendant had already gone a couple of hundred feet south on Walnut from the intersection when they first observed him pushing the shopping cart. Officer Williamson acknowledged that the area was dark and that, during the initial sighting, he saw the man's back moving away from them. When they returned to the intersection after determining that the alarm was coming from the liquor store, Officer Williamson turned south onto Walnut. He saw the shopping cart but not the man who had been pushing it. He drove further and saw the suspect running. According to Officer Williamson, the ensuing foot chase lasted about ten to twelve seconds.

David Lockhart testified that he was the manager of the liquor store and that it was owned by his father. He went to the scene of the burglary on the night of September 6, 2009, and found "a big hole" in the back wall. The wall was built of concrete blocks and the hole was "about three feet wide and about three feet tall." The hole had not been there previously. Lockhart also noticed "bottles on the floor and a bunch of stuff missing from the shelves." Missing was a case of Patron tequila and bottles of Wall Street whiskey. These bottles should have been on the shelf near the hole. Lockhart viewed the contents of the shopping cart at the scene and identified the bottles as belonging to the store.

Lockhart testified that he had given no one permission to create the hole or to take the bottles. He stated that the store was located in Memphis, Shelby County, Tennessee. Lockhart stated that the fence had been in place when he last left the building. He also stated that they did not keep shopping carts at the store.

The State rested its case after Lockhart's testimony. The defense put on no proof. After deliberating, the jury found the Defendant guilty as charged. The trial court subsequently sentenced the Defendant as a career offender to twelve years in the Tennessee Department of Correction. This appeal followed. The only issue the Defendant raises is the sufficiency of the evidence supporting his conviction.

**Analysis**

*Standard of Review*

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

*Burglary of a Building*

Our criminal code provides that "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any

portion thereof) not open to the public, with intent to commit . . . theft[.]" Tenn. Code Ann. § 39-14-402(a)(1) (2006). For the purposes of establishing a burglary, "enter" is defined as the "[i]ntrusion of any part of the body." Id. § 39-14-402(b)(1). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103 (2006).

The proof in this case demonstrated that, after the W & W Liquor Store had closed for business, someone cut the fence protecting the building, smashed a hole through the back wall of the building, reached in or entered, and removed numerous bottles of liquor from the interior of the building. The security alarm went off and Officers Rogers and Williamson responded. On their way to the liquor store, they passed a man pushing a shopping cart full of bottles. Upon discovering that the alarm was sounding from the liquor store, the officers returned to the area where they had seen the man pushing the shopping cart. The man ran, abandoning the cart. The officers gave chase and apprehended the suspect. Both officers identified the suspect as the Defendant. Both officers identified the Defendant as the man they had seen pushing the shopping cart. The shopping cart was recovered and found to contain bottles of liquor, a sledgehammer, and wire cutters. The manager of the liquor store identified the bottles in the shopping cart as the ones missing from the store's shelves. The manager testified that he had given no one consent to enter the building through a hole in the wall, nor had he given consent for anyone to take liquor from the store shelves. This proof is sufficient to support the Defendant's conviction.

The Defendant argues that "[t]he testimony of each of the officers who apprehended [him] differs significantly," pointing to discrepancies in times and distances, the direction in which the suspect was headed when they first sighted him, and who cuffed and searched the suspect. As our supreme court has made clear, however, "[t]he choice of which witnesses to believe and which to disbelieve is a matter entrusted to the jury. Furthermore, the jury is free to believe portions of a witness' testimony and to disbelieve other portions." State v. Thomas, 158 S.W.3d 361, 388 (appx) (Tenn. 2005) (citation omitted).

The Defendant also argues that neither officer "had a good opportunity to view the man pushing the cart" on their initial sighting. However, "[i]dentification of a defendant as the person who committed the offense for which he or she is on trial is a question of fact for the jury's determination upon consideration of all competent proof." Id. Both Officer Rogers and Officer Williamson identified the Defendant as the man they had seen pushing the shopping cart and whom they later apprehended. Officer Williamson described having noticed the man's clothing when first seeing him and testified that the man they later apprehended was wearing the same clothing. This proof was more than sufficient to support

the jury's conclusion that the man first seen pushing the cart was the same man the officers later apprehended and that that man was the Defendant.[1]

In sum, the jury had before it sufficient proof from which to conclude that the Defendant committed the burglary of W & W Liquor Store with the intent to commit theft. Accordingly, the Defendant is entitled to no relief on this basis.

**Conclusion**

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JEFFREY S. BIVINS, JUDGE

---

[1] We note that the written jury charge, included in the record on appeal, complied with the jury instruction set forth in State v. Dyle, 899 S.W.2d 607, 612 (Tenn. 1995), regarding identification. See also T.P.I.-Crim. 42.05 (15th ed. 2011).