IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 9, 2015 Session


**STATE OF TENNESSEE v. TOBY LYNN YOUNG**


**Appeal from the Circuit Court for Warren County**
**No. F14202     Larry B. Stanley, Jr., Judge**

_____


**No. M2015-00712-CCA-R3-CD Filed January 12, 2016**

_____


A Warren County jury found the Defendant, Toby Lynn Young, guilty of theft over $10,000, evading arrest, and driving on a suspended license, second offense.  The trial court sentenced the Defendant to a total effective sentence of twelve years' incarceration.  On appeal, the Defendant challenges the trial court's failure to properly instruct the jury on identity pursuant to State v. Dyle, 899 S.W.2d 607 (Tenn. 1995).  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

John P. Partin, District Public Defender, and Susan N. Marttala, Assistant District Public Defender, McMinnville, Tennessee, for the appellant, Toby Lynn Young.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; Lisa Zavogiannis, District Attorney General; and Justin Walling, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**


**I.  Factual and Procedural Background**

In August 2013, the Warren County Grand Jury indicted the Defendant for theft over $10,000, a Class C felony; evading arrest with risk of harm to bystanders, a Class D

felony; and driving on a suspended license, second offense, a Class A misdemeanor. At trial, Mark Gary Bottoms testified that, on July 16, 2013, he drove his 2005 Yamaha FJR-1300 motorcycle to his relatives' home on Harrison Ferry Road. Mr. Bottoms placed his helmet on his motorcycle before going inside the residence. He parked the motorcycle near a carport, making it visible from the road. About forty-five minutes later, when Mr. Bottoms went outside to retrieve his cell phone, he discovered that the motorcycle had been stolen. Mr. Bottoms testified that the motorcycle was worth around $9,000 and he had added a windshield and tank bag to the motorcycle that were worth an additional $600 total. Mr. Bottoms stated that he had a cell phone, digital camera, GPS system, prescription glasses, and multiple tools in the saddle bags of his motorcycle that were valued at about $1,500. Additionally, his helmet, which was also taken, was worth $600.

Mr. Bottoms reported the theft to police. Mr. Bottoms recalled that, while an officer was taking the report, the officer received photographs of some of the stolen property that had been recovered at another location. Mr. Bottoms identified his property from the photographs. Mr. Bottoms testified that he did not know the Defendant and he did not give anyone permission to take his motorcycle or any of the other items.

Two days after the theft, police informed Mr. Bottoms that they had recovered a motorcycle on Short Mountain Road. Mr. Bottoms accompanied officers to the location, where he positively identified the motorcycle as his. The motorcycle had been pushed off the road into some bushes. Although the motorcycle was damaged, Mr. Bottoms was able to drive it home. He testified that his helmet, the motorcycle's windshield, the saddle bags, and the tank bag were not with the motorcycle and the items were never recovered. Regarding the helmet, Mr. Bottoms explained that it was a full face helmet with a clear shield on the front.

Investigator Kevin Murphy of the Warren County Sheriff's Department testified that he was on patrol near the Short Mountain area on July 16, 2013, when he received a "be on the lookout" ("BOLO") alert from dispatch. The BOLO alert was for a stolen blue Yamaha motorcycle with blue saddle bags. As the BOLO was announced, Investigator Murphy looked to his right and saw a motorcycle matching that description being driven through a yard "coming right at [him]." Investigator Murphy testified:

> At that particular time I didn't know that it was [the Defendant]. It didn't click. I saw [the Defendant's] face. He was wearing a helmet and he had the face mask up but you could see his whole face, you could see his goatee. He was shaved right through here but he had the black goatee and the dark eyebrows. Also I kept on going and I turned around and he went that way. I chased after him. He was driving really fast. I could not catch up to him. I called it in and said I was trying to catch up to this motorcycle.

I think that it turned down Newt McKnight Road, which is a road that turns to the left and goes toward Short Mountain Road.

When Investigator Murphy could not catch up to the motorcycle, he returned to the location where he initially saw the motorcycle—the yard outside of a trailer owned by the Defendant's friend, Zachary Turner. Investigator Murphy intended to interview anyone at the trailer to "see who it was on the motorcycle[.]" When he pulled into the yard, Investigator Murphy saw the Defendant's dirt bike. Investigator Murphy knew it was the Defendant's dirt bike because he knew the Defendant and had seen the Defendant with the dirt bike several times. He explained, "It was the one [the Defendant] drives. It may actually be his father's but it's the one he rides." Investigator Murphy stated that, as soon as he saw the Defendant's dirt bike, he realized that it had been the Defendant he had seen on the stolen motorcycle.

Investigator Murphy testified that he found some of the victim's stolen property on the ground beside the Defendant's dirt bike. Specifically, he found the "inner bags of the hard saddle bags which were full of like the rain coat, the pants, the tools, the different things that was [sic] identified by [the victim]." He knocked on the door of Mr. Turner's trailer, but no one answered. Investigator Murphy testified that several officers assisted in the attempt to locate the Defendant, but the Defendant was not taken into custody until the following day after the motorcycle was recovered in Cannon County. Investigator Murphy explained that Sheriff Young of the Cannon County Sheriff's Department received an anonymous tip, which led them to the location of the motorcycle.

Investigator Steven Carpenter of the Warren County Sheriff's Department testified that he was leaving court on the day of the theft when he received a phone call from his captain, who told him to go to the Short Mountain area and look for the stolen motorcycle. Investigator Carpenter called Investigator Murphy to get a description of the motorcycle and a location of where Investigator Murphy had last seen it. Investigator Carpenter did not recall whether Investigator Murphy mentioned the Defendant's name during their phone call. Investigator Carpenter testified:

> I was riding outbound on Short Mountain Road towards Cannon County. It was right before the Cannon County line I saw a motorcycle coming towards me fitting the description of the one that was reported stolen. The driver of the motorcycle saw me and [] turned around in the road and took off back the other way. At that point I turned on my blue lights and sirens and attempted to stop the motorcycle.

Investigator Carpenter explained that the motorcycle was traveling at a high rate of speed—going at least seventy or eighty miles per hour on the "little back roads."

Investigator Carpenter testified that, when the motorcycle was on Spurlock Road, the driver of the motorcycle stopped, turned around, and came back towards Investigator Carpenter. The motorcycle was approximately a half to a quarter of a mile ahead of Investigator Carpenter when it turned around. Investigator Carpenter explained:

> At that point I just stopped in the middle of the road because I knew I wouldn't be able to turn around and catch back up to him. I just stopped in the middle of the road and rolled my window down and just looked at him when he come [sic] by and tried to ID him.

Investigator Carpenter stated that he was able to identify Defendant as the driver of the stolen motorcycle. He explained that the Defendant had on a blue helmet but the face shield on the helmet was up. The Defendant was going about twenty-five to thirty miles per hour at the time he passed Investigator Carpenter. Investigator Carpenter stated, "You could see [the Defendant's] goatee, you could see his whole face when he come [sic] by." Although Investigator Carpenter turned around and attempted to pursue the Defendant, he never regained sight of the Defendant.

Several days later, investigators in Warren County received a phone call from Sheriff Young of Cannon County. Sheriff Young explained that he had received an anonymous call advising him of the location of the stolen motorcycle. Investigators Carpenter and Murphy went to the location in Cannon County to retrieve the motorcycle. Investigator Carpenter testified that the motorcycle was found on a private, gravel lane. The motorcycle had been pushed off the side of the road into some tall grass and bushes, and it could not be seen from the road. He identified the motorcycle as the one he had seen the Defendant driving. According to Investigator Carpenter, the victim came to the location and identified the motorcycle as well. On cross-examination, Investigator Carpenter testified that the motorcycle was recovered about ten to fifteen miles from Mr. Turner's trailer. However, Investigator Carpenter knew Mr. Turner and stated that he was "certain" it was not Mr. Turner he had seen on the stolen motorcycle. Investigator Carpenter stated he was 100 percent certain of his identification of the Defendant.

Investigator Carpenter arrested the Defendant the following day. When he ran the Defendant's driver's license, Investigator Carpenter found that the Defendant's license was suspended due to an incident occurring in Cannon County.

At the close of the State's case-in-chief, the Defendant moved for a judgment of acquittal on the charge of evading arrest with a risk of harm to bystanders. The trial court granted the Defendant's motion for judgment of acquittal as to the Class D felony but allowed the Class E felony of evading arrest while operating a motor vehicle to proceed to the jury. The defense rested without presenting proof.

Regarding the issue of identity, the trial court instructed the jury as follows:

> The [C]ourt charges you that the identity of the defendant must be proven in the case on the part of the State to your satisfaction beyond a reasonable doubt. In other words, the burden of proof is on the State to show that the defendant now on trial before you is the identical person who committed the alleged crime with which he is charged. In considering identity of a person, the Jury may take into consideration all of the facts and circumstances in the case. The Court further charges you that if you are satisfied from the whole proof in the case beyond a reasonable doubt that the defendant committed the crime charged against him and you are satisfied beyond a reasonable doubt that he has been identified as the person who committed the crime charged, then it would be your duty to convict him. On the other hand, if you are not satisfied with the identity from the proof or if you have a reasonable doubt as to whether he has been identified from the whole body of the proof in the case, then you should return a verdict of not guilty.[1]

Following deliberations, the Defendant was convicted of theft over $10,000, evading arrest while operating a motor vehicle, and driving on a suspended license, second offense. At a sentencing hearing conducted August 1, 2014, the trial court sentenced the Defendant as follows:

| Offense | Classification | Offender Classification | Sentence |
|---|---|---|---|
| Theft over $10,000 | C felony | Range III, persistent | Twelve years |
| Evading Arrest | E felony | Range III, career | Six years |
| Driving on Suspended License, Second Offense | A misdemeanor | N/A | Eleven months and twenty-nine days |

The court ordered all sentences to run concurrently, for a total effective sentence of twelve years to serve in the Department of Correction.

---

[1] See 7 T.P.I.—Crim. 42.05(a) (18th ed. 2014) (setting out an alternative identity instruction that may only be used when identification is *not* a material issue in the trial).

On August 26, 2014, the Defendant filed a timely motion for new trial. The Defendant filed amendments to his motion for new trial on January 6 and January 27, 2015. The trial court conducted a hearing on the Defendant's motion for new trial on January 28, 2015. Although the trial court appeared to overrule the Defendant's motion for new trial, the trial court did not enter a written order denying the motion for new trial, and the record contains no minute entry reflecting a denial of the motion. Six days after the hearing, on February 3, 2015, the Defendant filed a third amendment to his motion for new trial, asserting that the trial court erred in failing to instruct the jury on identity pursuant to State v. Dyle. The trial court conducted a second hearing on March 11, 2015, and entered a written order denying the Defendant's motion for new trial on April 14, 2015. This timely appeal followed.

## II. Analysis

On appeal, the Defendant contends that the trial court's failure to instruct the jury using the expanded instruction on identity from Dyle was reversible error. He argues that, although he failed to request the Dyle instruction, the trial court was required to give the instruction because identification of the Defendant as the driver of the stolen motorcycle was *the* key issue at trial. Moreover, the Defendant asserts that the trial court's error is a non-structural constitutional error and that the State cannot show that it is harmless beyond a reasonable doubt. The State responds that the Defendant has waived this issue by failing to request the enhanced jury instruction from Dyle, or otherwise object to its omission, and by failing to raise the issue in a timely motion for new trial. The State argues that this court's review is thus limited to plain error. Alternatively, the State maintains that the Defendant is not entitled to relief under harmless error review.

In State v. Dyle, the Tennessee Supreme Court acknowledged that the "accuracy of eyewitness testimony" may be affected by the "fallibilities of human sense perception and memory" and that eyewitness testimony "is prone to many outside influences (police interrogations, line-ups, etc.) and is often decisive." Dyle, 899 S.W.2d at 612. In light of that acknowledgment, our supreme court found that "the pattern identity instruction traditionally given in Tennessee [was] not adequate in cases where identity is a material issue." Id. For this reason, the court promulgated a more comprehensive jury instruction for cases in which identity is a material issue. The instruction, which was later incorporated into the Tennessee Pattern Jury Instructions, provides as follows:

> One of the issues in this case is the identification of the defendant as the person who committed the crime. The state has the burden of proving identity beyond a reasonable doubt. Identification testimony is an expression of belief or impression by the witness, and its value may depend

- 6 -

upon your consideration of several factors. Some of the factors which you may consider are:

> (1) The witness' capacity and opportunity to observe the offender. This includes, among other things, the length of time available for observation, the distance from which the witness observed, the lighting, and whether the person who committed the crime was a prior acquaintance of the witness;

> (2) The degree of certainty expressed by the witness regarding the identification and the circumstances under which it was made, including whether it is the product of the witness' own recollection;

> (3) The occasions, if any, on which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with the identification at trial; and

> (4) The occasions, if any, on which the witness made an identification that was consistent with the identification at trial, and the circumstances surrounding such identifications.

Again, the state has the burden of proving every element of the crime charged, and this burden specifically includes the identity of the defendant as the person who committed the crime for which he or she is on trial. If after considering the identification testimony in light of all the proof you have a reasonable doubt that the defendant is the person who committed the crime, you must find the defendant not guilty.

Id.; see also 7 T.P.I.—Crim. 42.05 (18th ed. 2014). The Dyle Court held that this instruction must be given when identification is a material issue and it is requested by the defendant. Dyle, 899 S.W.2d at 612. Failure to give the instruction under these circumstances is plain error. Id. The court further held that, if identification is a material issue and the defendant does not request the instruction, the failure to give the enhanced instruction will be reviewable "under a Rule 52 harmless error standard."[2] Id. Identity is a material issue "when the defendant puts it at issue or the eyewitness testimony is uncorroborated by circumstantial evidence." Id. at 612 n.4.

---

[2] The text of Rule 52 ("Harmless Error and Plain Error") of the Tennessee Rules of Criminal Procedure was deleted in 2009 because harmless error and plain error standards are covered by amended Tennessee Rule of Appellate Procedure 36(b).

## *A. Waiver*

We must initially address the State's contention that, by failing to request the Dyle instruction or otherwise object to its omission, the Defendant has waived our review of the issue. We disagree. In its ruling, the Dyle Court specifically contemplated a defendant's failure to request the instruction and provided that, in such a situation, the issue is not waived; it is reviewable by the appellate court under a harmless error standard. Dyle, 899 S.W.2d at 612. The State has not presented, nor can we find, a case in which this court has found that a defendant waived the issue of the trial court's failure to provide the Dyle instruction when the defendant failed to request the instruction or otherwise object to its omission.

The State also asserts that the Defendant has waived this issue by failing to raise it in a timely motion for new trial. The State argues that, although the Defendant raised the issue in an amended motion for new trial, that amendment was not filed "until after the trial court conducted the hearing on the motion for new trial and ruled that those issues were without merit." In a reply brief, the Defendant responds that his amendment was timely because it was filed before the trial court entered an order denying his motion for new trial.

Tennessee Rule of Criminal Procedure 33(b) provides that trial courts should liberally allow amendments to the motion for new trial until the day of the motion hearing. Tenn. R. Crim. P. 33(b); see also State v. Lowe-Kelley, 380 S.W.3d 30, 34 (Tenn. 2012); State v. Hatcher, 310 S.W.3d 788, 800 (Tenn. 2010). In Hatcher, our supreme court advised:

> . . . [T]rial trial courts should not hold any hearing on a motion for new trial until a reasonable time after the sentencing hearing has been held, sentence has been imposed, and the judgment order entered. If the defense files a timely motion for new trial, the trial court should provide the defense with ample opportunity to amend the motion prior to holding the new trial hearing. If new counsel is sought and obtained, additional time for amendments to the motion for new trial may be granted as necessary. *Once the hearing on the motion for new trial is heard and an order denying a new trial has been entered, however, motions to make additional amendments must be denied.*

Hatcher, 310 S.W.3d at 804 (emphasis added). In a footnote, the court then emphasized that trial courts should enter promptly into the record a written order reflecting the denial

(or grant) of a motion for new trial. Id. at 304 n.6 (citing State v. Byington, 284 S.W.3d 220, 225 (Tenn. 2009)).

Based upon the above-quoted language from Hatcher, we conclude that the Defendant's amendment to the motion for new trial, which was filed after the hearing but before the trial court's order denying relief, was timely. See State v. Julio Ramirez, No. M2009-01617-CCA-R3-CD, 2011 WL 2348464, at *7-8 (Tenn. Crim. App. June 8, 2011), perm. app. denied (Tenn. Sept. 21, 2011) (explaining that, under Hatcher, the defendant could not amend his motion for new trial after the trial court's minute-entry denying the motion for new trial because "[a]fter this date, the trial court was without jurisdiction to entertain amendments to the Defendant's motion for new trial[]"); see also State v. Cleo Henderson, No. W2012-01480-CCA-R3-CD, 2013 WL 6157039, at *4 (Tenn. Crim. App. Nov. 21, 2013), perm. app. denied (Tenn. Mar. 5, 2014) (citing to Hatcher for the proposition that "[a]fter the denial [of the motion for new trial], the trial court could no longer entertain amendments to the motion for new trial[]"). Thus, because the Defendant presented the issue of the trial court's failure to instruct the jury pursuant to Dyle in a timely filed amendment to his motion for new trial, the issue is not waived.

### B. Harmless Error Analysis

Turning now to the question of whether the trial court erred in failing to provide the Dyle instruction, we agree with the Defendant that identity was a material issue at trial. In opening statement, defense counsel commented:

> [T]he bulk of the State's prosecution against [the Defendant] is centered upon a fleeting identification while chasing someone on a motorcycle that they never catch. Under these circumstances, the accuracy rate of such an identification, I would submit, on a scale of 0 to 10 would certainly be way lower than 9 or a 10 and this would be a required number for the State carrying the burden of proof.

Counsel questioned whether jurors had "ever made an error in identification or in judgment" and asserted that Investigators Murphy and Carpenter were "human like the rest of us and they too can . . . hastily form an opinion made in error." During closing argument, counsel argued that the investigators were mistaken in their identification of the Defendant and their testimony should not be enough to convict the Defendant. The Defendant clearly put his identity as the perpetrator of the offense at issue during trial. Thus, the trial court should have given the more detailed identity instruction announced by Dyle and contained in Tennessee Pattern Instruction 42.05. See Dyle, 899 S.W.2d at 612.

The Defendant concedes that he failed to request the enhanced identity instruction. According to Dyle, when identification is a material issue and the defendant does not request the enhanced instruction, failure to give it will be reviewable under the harmless error standard now found in Tennessee Rule of Appellate Procedure 36(b). See id. Rule 36(b) provides, in pertinent part, "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

However, the Defendant asserts that the trial court's error is a non-structural constitutional error, requiring the State to establish that the error is harmless beyond a reasonable doubt. See State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008). We recognize that "a defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990), superseded by statute on other grounds as stated in State v. Reid, 91 S.W.3d 247, 313 (Tenn. 2002). The supreme court's statement in Teel, however, was made in the context of the omission of the definition of rape, the underlying felony for the defendant's felony murder charge. Teel, 793 S.W.2d at 249. Certainly, the failure to instruct the jury on a key element of an offense is a constitutional error subject to harmless error analysis. See State v. Ducker, 27 S.W.3d 889, 899 (Tenn. 2000). Not every erroneous jury instruction, however, rises to the level of constitutional error. See Miller v. State, 54 S.W.3d 743, 746 (Tenn. 2001) (clarifying that State v. Brown, 836 S.W.2d 530 (Tenn. 1992), "did not declare or imply that the potentially confusing 'premeditation may be formed in an instant' jury instruction infringed upon a defendant's constitutional rights"). In Dyle, our supreme court did not declare or imply that the enhanced jury instruction on identity was necessitated by a defendant's constitutional rights. Moreover, the court explicitly stated that a trial court's failure to provide the enhanced jury instruction when identity was a material issue and the defendant failed to request the instruction was a matter reviewable under the harmless error standard of Rule 52 of the Tennessee Rules of Criminal Procedure (now found in Rule 36(b) of the Tennessee Rules of Appellate Procedure). Accordingly, we conclude that the Dyle jury instruction is not an instruction that is *constitutionally* required, and we will analyze the trial court's failure to provide the Dyle identity instruction under the non-constitutional harmless error standard of Rule 36(b).

The proof at trial reflects that both Investigator Murphy and Investigator Carpenter positively identified the Defendant as the driver of the stolen motorcycle. Both witnesses were familiar with the Defendant and testified that they could clearly see the Defendant's whole face through the open shield on the motorcycle helmet. Although Investigator Murphy testified that it was not until he saw the Defendant's dirt bike that his identification of the Defendant as the driver of the stolen motorcycle "clicked,"

Investigator Carpenter testified that he stopped his car and rolled down his window as the motorcycle passed him so that he could get a good look at the driver. The motorcycle passed by Investigator Carpenter going only twenty-five to thirty miles per hour. Investigator Carpenter testified that he immediately identified the Defendant and stated that he was 100 percent sure of his identification. Additionally, the reliability of the investigators' identifications was corroborated by the location of the dirt bike the Defendant was known to drive in the same yard where Investigator Murphy first saw the stolen motorcycle. Moreover, several of the victim's items that were stolen with his motorcycle were found on the ground beside the Defendant's dirt bike. The corroborating evidence thus supported the reliability of the eyewitness identification in this case. We conclude that the trial court's failure to give the enhanced identity instruction in these circumstances was harmless error. See Tenn. R. App. P. 36(b). The Defendant is not entitled to relief.

### III.  Conclusion

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE